ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

2016 AUG 29 PM 4: 03
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION
FILED
CLERK OF COURT

RYAN-DESHAWN WRIGHTMOORE,
Plaintiff,

-vs-

GLOBALFOUNDRIES U.S. INC.;
GLOBALFOUNDRIES U.S. INC.
WELFARE BENEFIT PLAN; *and*
STANCORP FINANCIAL GROUP,
INC., *d/b/a* STANDARD INSURANCE
COMPANY,
Defendants.

CIVIL ACTION NUMBER:

# 4-16CV- 806 -A

(to be filled by the Clerk's office)

Jury Trial Demanded
**COMPLAINT**

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

COMES NOW RYAN-DESHAWN WRIGHTMOORE (hereinafter "Plaintiff") to bring charges complaining of GLOBALFOUNDRIES U.S. INC. WELFARE BENEFIT PLAN and STANCORP FINANCIAL GROUP, INC. (collectively "Defendants"). Plaintiff is self-represented. This complaint arises from violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"). Plaintiff alleges Defendants are liable for ERISA violations, breach of contract, fraud, and other claims. For cause of action Plaintiff shall respectfully show the Court as follows:

## (I) **Jurisdiction and Venue**

**1.**     Jurisdiction is appropriate in the district court under 28 U.S.C. § 1332. Plaintiff and Defendants (the "Parties") are of diverse citizenship, and the amount in the controversy exceeds $75,000.00, exclusive of interest and cost.

**2.**     Northern District of Texas Fort Worth Division (the "Venue") is proper pursuant to 29 U.S.C. § 1132(e)(2). Defendants may be found the Venue, and process may be served in any other district where the Defendants may be found. Relevant transactions, acts,

1   practices, recruitment, remotely performed computer-based worked, and courses of

2   business alleged herein took place in the Venue. Defendants recognized Plaintiff's home

3   in Texas as Plaintiff's address and sends correspondences by USPS and parcel companies.

4                    (II)        **The Parties and The Welfare Benefit Plan**

5        A.   PLAINTIFF RYAN-DESHAWN WRIGHTMOORE

6   **3.**      Plaintiff is a citizen and resident of Tarrant County, Texas.

7   **4.**      On January 19, 2016, Plaintiff was hired and became a participant in welfare

8   benefits sponsored by Defendant Globalfoundries U.S. Inc. ("Globalfoundries").

9   **5.**      During relevant dates documented herein, Plaintiff was a job candidate, trainee,

10  newly hired employee, and recipient of short-term disability insurance.

11  **6.**      In November 2012, Plaintiff was diagnosed with a neurological handicap. The

12  disability was discovered during a lengthy recovery from two abdominal surgeries.

13  Hospital Emergency Department physicians and neurologists confirmed the condition.

14  Plaintiff decided to continue working as Plaintiff's condition stabilized. Plaintiff's

15  disability causes intense migraines, aphasia (slurred speech), neuropathy and, infrequently,

16  short-term memory loss. Since December 2014, Plaintiff has been able to perform work

17  without restrictions. Plaintiff was required to follow-up with Texas doctors at least once a

18  month.

19  **7.**      Plaintiff performed highly specialized work and met job expectations without being

20  restricted by disability.  Plaintiff had worked in microfabrication in Texas; the job roles

21  were in operations management and manufacturing engineering. Plaintiff performed highly

22  specialized work and met job expectations without being restricted by disability. This

23  disability is recognized by both states of New York and Texas, and the U.S. Equal

24  Employment Opportunity Commission ("EEOC").

25  **8.**      Due to the egregiousness of the fraudulent acts, omission, and schemes set forth

26  below, and Defendants willful violation of federal and state laws and regulations, Plaintiff

27  seek and expect to recover, in addition to compensatory damages, at least $195, 000.00 in

28  punitive and exemplary damages from Globalfoundries pursuant to Texas Civil Practice &

     Remedies Code § 41.008(b).

1    B.   DEFENDANTS GLOBALFOUNDRIES U.S. INC. AND GLOBALFOUNDRIES
2         U.S. INC. WELFARE BENEFIT PLAN

3    **9.**      In March 2014, Globalfoundries recruited Plaintiff, and on December 18, 2014,
4    Globalfoundries offered Plaintiff an employment agreement (the "Agreement") (see
5    Exhibit "**A**," attached hereto). The effective date, and employment start date was January
6    19, 2015. As part of the Agreement, Globalfoundries agreed to provide relocation
7    assistance.

8    **10.**     On information and belief, controlling interest in Globalfoundries is held by The
9    Emirate of Abu Dhabi of the United Arab Emirates[1] and other minor stakeholders.

10   **11.**     On   information   and   belief,   Globalfoundries   is   the   plan   sponsor   of
11   GLOBALFOUNDRIES U.S. INC. WELFARE BENEFIT PLAN ("Globalfoundries
12   Plan"). Globalfoundries Plan is administered from the State of California, and benefits are
13   offered to employees of Globalfoundries.

14   **12.**     From January 19, 2015, until an undetermined date in the past, Plaintiff was a
15   Globalfoundries Plan participant (see Exhibit "**B**," attached hereto).

16   **13.**     On information and belief, Globalfoundries Plan is an employee welfare benefit
17   plans, as defined by 29 U.S.C 1002(1) and 29 C.F.R. 2510.3-1.

18   **14.**     On information and belief, Globalfoundries is incorporated under the laws of
19   Delaware, and its principle offices are located at 2600 Great America Way; Santa Clara,
20   CA 95054-1169. Globalfoundries U.S. Inc. Legal Department's phone is (518) 305-9013.

21   **15.**     Based on directory information provided by the Texas Secretary of State,
22   Globalfoundries mailing for Texas service of process is Globalfoundries U.S. Inc., C/O
23   CSC Lawyers Incorporating Service, 211 E. 7th Street Ste. 620, Austin, TX 78701-3218.

24   **16.**     On information and belief, Globalfoundries' Legal Department Director is Brendan
25   Chudy ("Mr. Chudy"), email: *brendan.chudy@globalfoundries.com.*

26

27

28
_____

[1] Globalfoundries is an independent company, and neither Abu Dhabi nor any foreign government is a
party in this suit.

Complaint: Jury Demanded
RYAN-DESHAWN WRIGHTMOORE *Vs.* GLOBALFOUNDRIES U.S. INC.; STANCORP FINANCIAL GROUP, INC.

1    **17.**    On information and belief, Globalfoundries is a contract manufacturer of digital-

2    electronic components, which power mostly wireless and battery-powered electronics.

3    Devices are assembled by an advanced microfabrication process in a cleanroom.

4    Globalfoundries' factories are located in northeastern United States.

5    <u>C.</u>    DEFENDANT STANCORP FINANCIAL GROUP, INC.

6    **18.**    On information and belief, STANCORP FINANCIAL GROUP, INC. ("Standard

7    Insurance") provides and administers long-term and short-term group disability insurance

8    for Globalfoundries Plan.

9    **19.**    On information and belief, Standard Insurance does business as The Standard Life

10   Insurance Company of New York ("DBL"), a wholly-owned subsidiary licensed only in

11   New York State. DBL provides supplemental short-term disability mandated by the New

12   York Disability Benefits Law, N.Y. Article 9 § 204 ("NY Benefits Law"). Short-term

13   disability insurance mandated by NY Benefits Law is governed by ERISA pursuant to 29

14   U.S.C. § 1144, which supersedes state laws relating to any employee benefit plan.

15   **20.**    On information and belief, Standard Insurance is a publicly owned Delaware

16   corporation[2]. Principal offices for Standard Insurance are located at 1100 SW Sixth

17   Avenue; Portland, OR 97204-1093.

18   **21.**    Based on information from the Texas Department of Insurance, the address for

19   Texas service of process is StanCorp Financial Group, Inc., C/O C T Corporation System,

20   1999 Bryan St. Ste. 900; Dallas, TX 75201 -3136.

21

22                          (III)    **Factual Allegations**

23   **22.**    On March 5, 2014, Globalfoundries, represented by its manager, Todd Dietrich

24   ("Mr. Dietrich"), interviewed Plaintiff and other candidates during a recruitment and job

25   fair at Westin Park Center Hotel in Dallas, TX. The one-on-one interviews were conducted

26   in a hotel bedroom. During the interview, Mr. Dietrich explained that Globalfoundries was

27

28   _____

[2] STANCORP FINANCIAL GROUP, INC. is traded on NYSE:  SFG

1   a manufacturer of high tech devices and in the same industry in which Plaintiff had been

2   employed.

3   **23.**     Mr. Dietrich informed Plaintiff that Globalfoundries recently opened a factory in

4   Malta, NY, and the company needed to expanded and increase headcount to meet deadlines

5   imposed by companies such as Apple, AMD, Samsung, and Intel, and it had been getting

6   hiring quotas because the company received funding, tax breaks, and other subsidies from

7   the U.S. government and The State of New York.   Globalfoundries was looking to

8   drastically increase factory production primarily because it needed to meet the demands of

9   Apple, which had been in the process of releasing its latest version iPhone.

10   **24.**     The next interview was with Globalfoundries' human resources representative, John

11   Toy ("HR1"). HR1 notified Plaintiff, verbally and via email, of Globalfoundries' plan to

12   immediately move forward with a job offer, and to accommodate Plaintiff's disability

13   accommodations. HR1 reassured Plaintiff that the disability requested, which one-day off

14   to go to a doctor's appointment in February 2015, would be honored.

15   **25.**     On or about June 5, 2014, HR1 and a second human resources representative,

16   Barbara Iverson ("HR2"), invited Plaintiff to Malta, New York for an onsite visit and

17   interview. On June 16, 2014, Globalfoundries conducted an interview, afterward held a

18   meet and greet between managers and candidates. At this time Globalfoundries' Human

19   Resources notified Plaintiff that HR1 was no longer employed with Globalfoundries, and

20   the new contact would be HR2. During subsequent inquiries on July 18, 2014, September

21   3, 2014, and November 25, 2014, HR2 repeated Globalfoundries' promise to offer a job

22   and make Plaintiff's requested accommodations.

23   **26.**     On information and belief, HR2 communicated that high turnover caused

24   documentation to be lost, and that the company underwent a major "restructuring." HR2

25   informed Plaintiff Globalfoundries had neither an employment application nor any special-

26   accommodations requests. HR2 asked that these items be submitted to move forward with

27   the hiring practice. In November 2014, Globalfoundries notified Plaintiff that HR2 was no

28   longer with the organization and the communication would be handled with a new Human

Resources representative, Jennifer Therrien ("HR3").

Complaint: Jury Demanded
RYAN-DESHAWN WRIGHTMOORE *Vs.* GLOBALFOUNDRIES U.S. INC.; STANCORP FINANCIAL GROUP, INC.

1   **27.**   On December 14, 2014, after numerous delays, for unknown reasons,

2   Globalfoundries emailed a job offer. Two new Human Resources representatives were

3   assigned: Lisa Jankowski ("HR4") and Allison McCabe ("HR5"). HR4 made Plaintiff

4   aware that the employment application, résumé, and other documents that had been

5   submitted in June 2014 due to Human Resources employees leaving the company.

6   **28.**   On December 18, 2014, Plaintiff signed the job agreement. Globalfoundries and

7   Plaintiff mutually agreed on a <u>January 19, 2015</u>, start date. The job title was Senior

8   Manufacturing Engineer, a project-based, salaried, and overtime-exempt position. The

9   "senior" designation was given to recognize Plaintiff's experience. The agreement

10   designated a specific department and reporting manager, Irwin Mohammad ("SPV1"). The

11   Agreement offered employment, welfare benefits, and a performance-based relocation

12   bonus (<u>see</u> Exhibit "**C**," attached hereto)

13   **29.**   On or about December 19, 2014, Plaintiff was instructed to work with Human

14   Resource representative, Kara Schuff ("HR6"), during pre-hire screening.

15   **30.**   On January 5, 2015, Plaintiff passed pre-hire screening, which included a

16   documented medical examination.

17   **31.**   On January 6, 2015, HR6 notified Plaintiff that Globalfoundries rescinded the job

18   offer. Globalfoundries denied having any medical documentation. Plaintiff resubmitted

19   medical information regarding being disable and under the care of a physician

20   **32.**   On January 8, 2015, HR6 notified Plaintiff that Globalfoundries' management

21   voided the rescind decision because physician's documentation had been received.

22   Globalfoundries assured Plaintiff that it was in possession of sensitive medical documents

23   and would not misplace it.

24   **33.**   On information and belief, employment began on <u>January 19, 2015</u>. Plaintiff

25   covered relocation expenses, travel, lodging, and food. During interviews promised to

26   reimburse business travel; it would provide the same or similar assistance as it did in June

27   2014. Globalfoundries delayed initial pay until a scheduled exempt-employee payroll date.

28   This date was not communicated during employee orientation. Plaintiff made attempts to

contact HR6 and the benefits department to inquire about pay and reimbursements, but all

Complaint; Jury Demanded
RYAN-DESHAWN WRIGHTMOORE *Vs.* GLOBALFOUNDRIES U.S. INC.; STANCORP FINANCIAL GROUP, INC.

1  responses were confusing but yet similar, and sounded scripted and well-rehearsed to

2  Plaintiff.

3  **34.**    After completing training, Plaintiff was assigned a new supervisor named Amgad

4  Galy ("Mr. Galy"). Mr. Galy explained policy regarding schedules for exempt employees.

5  On information and belief, as a salaried employee, Globalfoundries issued a laptop

6  computer, enabling Plaintiff to work while at home and while on business travel.

7  **35.**    Plaintiff was not provided with a trainer or permanent schedule. Mr. Galy instructed

8  Plaintiff to continue computer-based training and be available to read company emails and

9  instant messages during off days.

10  **36.**    On February 13, 2015, Plaintiff requested time off and was approved. The adjusted

11  schedule for Plaintiff on the week beginning February 15, 2015, was the following:

12     o   Sunday:                OFF

13     o   Monday:                OFF

14     o   Tuesday:               OFF

15     o   Wednesday:          **SCHEDULED OFF**

16     o   Thursday:             18:00-06:00

17     o   Friday: Thursday:   18:00-06:00

18     o   Saturday:             18:00-06:00

19  Also on February 13, 2015, Mr. Galy approved[3] the time off, but Mr. Galy was unsure

20  whether the time should be paid vacation or short-term disability.

21  **37.**    On February 14, 2015, Plaintiff returned to Texas, and on February 15, 2015,

22  Plaintiff received hospital treatment and was placed on and unexpected work restriction.

23  Plaintiff contacted Mr. Galy in regard to the procedure and work restriction and requested

24  addition days off due to doctor's advice.

25  **38.**    While in Fort Worth, TX, Plaintiff continued to work and used company-provided

26  laptop to complete training, and read and respond to work emails.

27  _____

28  [3] Management approval was documented on payroll checks. Management approval and signoff is
required to process payroll. All payroll checks show that all time received Management approval, and
there were no "late arrivals" or "unexcused absences."

Complaint: Jury Demanded
RYAN-DESHAWN WRIGHTMOORE *Vs.* GLOBALFOUNDRIES U.S. INC.; STANCORP FINANCIAL GROUP, INC.

**39.** On February 17, 2015, Mr. Galy called Plaintiff and left an emailed with "urgent information." Mr. Galy explained that the approved day off, <u>February 18, 2015</u>, had been negatively scrutinized during a staff meeting with management. Mr. Galy admitted he was not familiar with Globalfoundries' Policy for new-hire employees, but ensured Plaintiff that Plaintiff time off was approved.

**40.** Mr. Galy directed Plaintiff to return to the factory to initiate a short-term disability with the Health Occupation Nurse, Cheryl Granato ("Ms. Granato"), rather than using vacation time. Plaintiff explained that the demand would be difficult and expensive, but would be followed. Mr. Galy assured Plaintiff that it was business travel and would be reimbursed.

**41.** Plaintiff agreed to return on <u>February 19, 2015</u>. Plaintiff covered the airfare and travelled on February 18, 2015, which had been approved off. On February 18, 2015, during a layover in Atlanta, GA, Plaintiff collapsed and received treatment, from airport medics, for dehydration. Plaintiff was stabilized and continued on a rescheduled flight to Albany, NY.

**42.** On information and belief, Plaintiff arrived at Globalfoundries' factory on or about 06:00 February 19, 2015, to meet with Mr. Galy and Ms. Granato to arrange short-term disability. Plaintiff's identification badge had been lost in airline luggage; therefore, entering the facility required security clearance.

**43.** Plaintiff was stopped and interrogated by a security guard ("Security"). Security told Plaintiff that Plaintiff looked "suspicious," so assistance from Plaintiff's supervisor would be need. Plaintiff told Security the name of Mr. Galy. Plaintiff pronounced the name of Amgad Ghaly, and Security repeated it as "I'm God and Allah." Security asked whether Plaintiff had been drinking alcohol or using drugs before coming to the facility. Plaintiff denied and explained to Security that Plaintiff had undergone a recent medical procedure in Texas.

**44.** About an hour later, Plaintiff started to become ill and feeling worse since arriving at the site. Plaintiff was concerned about possibly having a stroke, due a severed migraine and difficulty speaking. Plaintiff notified Security. Security told Plaintiff that he suspects

1   substance abuse to be the problem and asked Plaintiff to do a drug screening. Plaintiff
2   agreed.

3   **45.**   Plaintiff also requested a doctor and emergency treatment. Plaintiff explained again
4   that the symptoms require treatment at a hospital.

5   **46.**   On information and belief, Security walked Plaintiff to a clinic, located inside the
6   facility. In the clinic, Ms. Granato, a nurse whom Security falsely presented as a doctor,
7   was preparing to perform a drug and alcohol test.

8   **47.**   Ms. Granato explained that nothing was medically wrong with Plaintiff, and
9   performed an alcohol test that was similar to a field-sobriety test performed by law
10  enforcement.

11  **48.**   On information and belief, Plaintiff passed the alcohol and drug test. Plaintiff asked
12  for an ambulance to be called. Security and Ms. Granato refused to call the ambulance but
13  arranged for Plaintiff to have a hotel and taxi, at Plaintiff's own expense.

14  **49.**   Security and Ms. Granato demanded that Plaintiff to take another drug test. On
15  information and belief, during the test, Security, Ms. Granato, a newly assigned Human
16  Resource Specialist ("HR7"), and a nursing assistant were present and demanded to
17  observe Plaintiff urinating. Plaintiff complained about the process and requested an
18  ambulance again.

19  **50.**   Security and Ms. Granato threatened Plaintiff with termination if an ambulance was
20  called. Ms. Granato, personally, threatened to have Plaintiff terminated by Human
21  Resources, which would lead to a lost in benefits.

22  **51.**   On information and belief, Security and Ms. Granato demanded another urine test.
23  Security asked Plaintiff to leave restroom door opened so that "[Plaintiff's] junk can be
24  seen."

25  **52.**   The observers were more interested in seeing Plaintiff's genitals rather than
26  completing the drug screen or providing treatment. Plaintiff experienced difficulty
27  urinating for the second drug screen. Security asked whether Plaintiff had "shy bladder or
28  shy junk." Plaintiff informed the observers that the experience was "humiliating,
    disgusting, and harmful," and that their actions could damage Globalfoundries' corporate

1   image. Security and Ms. Granato said that Plaintiff was lying about being ill. After, finally

2   urinating, and completing an embarrassing and humiliating exam, which became more

3   aggressive and sexual, the screening stopped.

4   **53.**   Before leaving the facility, Ms. Granato instructed Plaintiff on how to contact

5   Globalfoundries' short-term disability provider, Standard Insurance. Ms. Granato

6   apologized for her and Security's behavior, but assured she would do whatever was needed

7   to prevent a job-protected leave due.

8   **54.**   On information and belief, Security, HR7, and Ms. Granato kept Plaintiff in the

9   facility for approximately five hours and refused to call an ambulance that Plaintiff

10   requested. Security eventually allowed Plaintiff to leave the facility and before allowing

11   Plaintiff to depart. Plaintiff was escorted outside the facility and left to endure adverse

12   weather, the winter temperature was well below zero-degrees Fahrenheit in Malta, NY.

13   **55.**   On the evening of February 19, 2015, went to a nearby hospital emergency room

14   and initiated short-term disability with Standard Insurance and Globalfoundries. Plaintiff

15   was immediately transferred to a lager hospital in Albany, NY. Plaintiff was admitted,

16   treated, and released from the hospital. Plaintiff performed a drug screen at the hospital.

17   Plaintiff had no street drugs or illegally obtained prescribed drugs in his system. Plaintiff

18   received a doctor's notice and work restriction from an emergency department doctor at

19   Albany Medical Center. After release from the hospital, Plaintiff submitted the doctor's

20   notice to Globalfoundries, and filed an internal complaint with Globalfoundries' Ethics

21   (Legal Department) about the treatment. Plaintiff also submitted a sworn affidavit and

22   contacted the Saratoga County District Attorney's Office about civil and criminal options

23   to pursue.

24   **56.**   On February 20, 2015, on information and belief, Ms. Granato, HR7, and Mr. Galy

25   communicated all had received and approved Plaintiff's time off due to medical issues.

26   Plaintiff made Ms. Granato and HR7 aware of Plaintiff's location in New York.

27   **57.**   On information and belief, approximately three hours after communicating with

28   Globalfoundries, Plaintiff received a phone call from HR7 requesting that a conference

call was urgently needed, without explain the reason for the call.

Complaint: Jury Demanded
RYAN-DESHAWN WRIGHTMOORE *Vs.* GLOBALFOUNDRIES U.S. INC.; STANCORP FINANCIAL GROUP, INC.

1   **58.**   HR7 called again and told Plaintiff that he was not entitled to receive short-term

2   disability, and Globalfoundries would interfere and change employment dates to ensure

3   denial of benefits.

4   **59.**   On or about February 20, 2015, Plaintiff contacted Standard Insurance by telephone

5   and notified Standard Insurance of Plaintiff location in New York. On February 21, 2015,

6   Plaintiff was referred to a neurologist and primary-care doctor in New York. Both New

7   York physicians and the physicians who treated Plaintiff on February 15, 2016,

8   documented the need for Plaintiff to be on disability and work-related restrictions starting

9   on February 18, 2015.

10   **60.**   On information and belief, Standard mailed notification on February 24, 2015 to a

11   Texas address reported by Globalfoundries. The following address was used:

12         o   5213 E Berry St

13         o   Forest Hill, TX 761197719

14   On information and belief, this address was never reported to Globalfoundries or Standard

15   Insurance. The city, state, and zip combination does not exist and is not recognized by the

16   U.S. Postal Service. Globalfoundries prides itself on making accurate "data-based

17   decisions." This incorrect data delayed Plaintiff receipt of Standard's correspondence.

18   Globalfoundries willfully provided an inaccurate mailing address to interfere with the

19   disability request.

20   **61.**   On information and belief, Plaintiff's physician completed required disability paper

21   work on February 25, 2015, and ordered a leave of absence until March 9, 2015.

22   **62.**   On or about March 2, 2015, Plaintiff received a termination notice from

23   Globalfoundries sent via FedEx to Plaintiff's Texas address. The notice explained that

24   Plaintiff had been terminated on February 20, 2015, with an effective date of February 20,

25   2015; no reason for termination was given. Plaintiff was also notified that medical, dental,

26   and vision insurance ended, and COBRA Continuation was required. The correspondence

27   was willfully sent to wrong state to ensure a benefits denial.

28   **63.**   On March 7, 2015, Plaintiff received all payroll statements. Plaintiff's was

compensated from February 8, 2015, until March 7, 2015. The gross pay was $23,278,

1   which included a performance-based $18,000 bonus. The bonus was paid after the 30-

2   days promised in the Agreement (see Exhibit "**C" para.1**, attached hereto). Plaintiff was

3   not paid business travel or wages from January 19, 2015, through February 7, 2015.

4   **64.**    From March 15, 2015, through March 18, 2015, Plaintiff sent written letters to

5   Globalfoundries regarding the unexplained termination, and the legal protection of

6   benefits, and protection against retaliation. On March 18, 2015, a new Human Resources

7   representative, Peg Nelson ("HR8") contacted Plaintiff and requested documentation;

8   Plaintiff submitted medical records again and reminded HR8 that Plaintiff was being

9   treated by a doctor and started on short-term disability on approximately February 20,

10   2015.

11   **65.**    On information and belief, Standard Insurance denied Plaintiff's request for short-

12   term disability on March 27, 2015, because Globalfoundries reported employment dates:

13   January 2, 2015, to January 20, 2015. These dates do not match the agreed start date and

14   termination effective date in the packaged mailed to Plaintiff's home. The claim had been

15   properly made, and Plaintiff was entitled to receive short-term disability. Globalfoundries

16   willfully changed the employment dates in close temporal proximity of Plaintiff's attempt

17   to access benefits. This decision was favorable for Globalfoundries.

18   **66.**    On March 27, 2015, Plaintiff contacted Standard Insurance and requested an appeal,

19   and requested a copy of the files submitted by Globalfoundries and notes from Plaintiff's

20   file notes held by Standard Insurance. Plaintiff explained that there is sufficient reason to

21   believe that Globalfoundries fraudulently reported the dates. Standard Insurance agreed to

22   start the appeal and contact Globalfoundries to verify the employment dates. Standard

23   acknowledged the fraudulent actions of Globalfoundries, but no investigation took place.

24   **67.**    On or about April 9, 2015, Standard Insurance notified Plaintiff that appeal had

25   started and that Globalfoundries reported new separation dates: January 20, 2015, and

26   February 19, 2015. Plaintiff again requested copies documentation submitted by

27   Globalfoundries. Standard Insurance refused to supply the documents and gave no reason.

28   Plaintiff requested an additional investigation into the incorrect address supplied from

   Globalfoundries. Standard Insurance did not provide anything.

**68.** On April 22, 2015, Plaintiff filed charged against Globalfoundries with the New York State Division of Human Rights and the EEOC. The charges relate to unlawful discriminatory practice in violation of Article 15 of the Executive Law of the State of New Human Rights Law because of discrimination. (**No claims from EEOC case are included in this Complaint. As of August 16, 2016, Administrative Remedies HAVE NOT been exhausted, and EEOC HAS NOT issued Plaintiff a "Right to Sue Notice.")**

**69.** On April 30, 2015, Plaintiff received approval to receive unemployment compensation from the Texas Workforce Commission ("TWC"), citing Section 207.044 of the Texas Unemployment Compensation Act. On information and belief, TWC determined Globalfoundries terminated Plaintiff for medical reasons and not misconduct. Globalfoundries chose not to defend itself before TWC. Plaintiff began to search for other employment opportunities.

**70.** On May 22, 2015, Globalfoundries responded to EEOC charges stated that, contrary to the aforementioned facts, Plaintiff was terminated for absences, which violated policies for new hires on probation. Globalfoundries described Plaintiff's position as similar to a non-exempt, hourly employee.

**71.** Globalfoundries alleged Plaintiff used an electronic time clock to track worked hours. This is not true as Plaintiff was paid a salary. Globalfoundries willfully blinded itself from this fact.

**72.** Globalfoundries denied knowing Plaintiff had a disability. Plaintiff and Globalfoundries had this documented in January 2015, due to Plaintiff's concerns about Globalfoundries' habitual "willful blindness" to disability accommodation and medical documentation.

**73.** The response documented the termination had occurred on February 20, 2015, and effective date changed to February 19, 2015. This was the first time Globalfoundries communicated performance or attendance had been an issue. No supervisor or human resource employee communicated this verbally or documented it.

1    **74.**    The response from Globalfoundries also alleged Ms. Granato had contacted Plaintiff

2    on May 19, 2015, for a health assessment. This date was approximately three months after

3    Plaintiff had been last contacted by Ms. Granato.

4    **75.**    On December 16, 2015, Plaintiff received noticed that Globalfoundries issued an

5    objection to Plaintiff receiving workers' compensation. Plaintiff applied for Workers'

6    Compensation to recover medical cost, and assumed to be eligible.

7    **76.**    On information and belief, the denial was completed by Ms. Granato. Ms. Granato,

8    on behalf of Globalfoundries, recorded date of hire as February 2, 2015. This conflicts

9    with documented disability, medical treatment, and injuries. On information and belief,

10   Globalfoundries reported the date employer first had knowledge of injury was October

11   29, 2015. This illness and injury from Globalfoundries' staff not calling ambulance on

12   February 19, 2015, had been known by Globalfoundries and Standard Insurance for about

13   eight months. The denial further claims "no medical treatment provided."

14   **77.**    On March 28, 2016, Plaintiff requested another appeal and detailed review from

15   Standard Insurance. The request explained that the Plaintiff was still disabled and met the

16   plan's definition of being disabled. Plaintiff submitted another requested of a copy of

17   documentation submitted by Globalfoundries and file notes that had been requested for

18   over a year but never received. The documentation had the falsified dates, which led to a

19   denial of DBL (state-mandated disability) coverage. Plaintiff also requested copies of

20   medical-information requests Standard Insurance sent to Plaintiff's physicians. Finally,

21   Plaintiff requested a full copy of the group policy; Standard Insurance provide none of the

22   information requested.

23   **78.**    On information and belief, despite knowledge or reckless failure to learn that

24   Globalfoundries reported materially false and misleading employment information,

25   Standard Insurance issued its **Final Decision** regarding Plaintiff's disability claim.

26   Standard Insurance determined that short-term disability began February 18, 2015 and

27   ended May 12, 2015. The final review did not include the appeal of state-mandated

28   disability insurance, covered by its subsidiary, DBL. No file notes or documentation was

provided. No detailed notes from physician review was included and disability pay would

1 | be paid February 25, 2015, through May 12, 2015. **This decision exhausted the plan's**
2 | **administrative appeals process.**

3 | **CAUSE OF ACTION**

4 | **First Claim: Violation of 29 U.S.C. § 1132 (a)(1)(B)[Denial of Benefits]**

5 | **Defendant(s): Globalfoundries U.S. Inc. Welfare Benefit Plan**

6 | **79.**     Plaintiff re-allege and incorporates by reference the receding paragraphs of this
7 | Complaint.

8 | **80.**     Defendant denied disability required by NY Benefits Law.

9 | **81.**     Defendant denied short-term and long-term disability insurance.

10 | **82.**     Plaintiff exhausted the administrative appeals process.

11 | **83.**     On information and belief, Plaintiff properly, and timely, made a claim for benefits.
12 | Plaintiff is entitled to short-term and long-term disability insurance benefits. Plaintiff was
13 | denied short-term and long-term disability insurance benefits after Globalfoundries had
14 | reported, as fact, incorrect employment dates. All other Globalfoundries Plan benefits were
15 | discontinued and/or denied.

16 | **84.**     Plaintiff was denied a full 26-weeks of short-term disability, 26 weeks of DBL
17 | disability, medical, vacation, and long-term disability because Plaintiff's disability
18 | continued after 26 weeks.

19 | **85.**     Defendants, directly or indirectly, failed to provide specific reasons for denial of
20 | benefits. Globalfoundries Plan failed to fully and fairly review claim.

21 | **86.**     Defendant, Standard Insurance, as plan administrator of Globalfoundries Plan's
22 | disability coverage failed to investigate repeated allegations of fraud, conspiracy, and
23 | falsification of insurance documents.

24 | **Second     Claim: Violation of 29 U.S.C. § 1132--Interference Claim**
25 | **Defendant(s): Globalfoundries U.S. Inc.**

26 | **87.**     Plaintiff re-allege and incorporates by reference the receding paragraphs of this
27 | Complaint to show Defendants interfered with Plaintiff disability-insurance claim and
28 | retaliated against Plaintiff for exercising legally protected benefit rights.

1  **88.**    Defendant, Globalfoundries went to extreme and unusual lengths, and diverted

2  company resources, to deny Plaintiff access to disability insurance. The doctrine of

3  *Temporal Proximity* should be applied to show retaliation. Disability began on February

4  18, 2015, and without warning or explanation, Plaintiff's reporting schedule changed,

5  approval of Plaintiff's day off on February 18, 2015, was rescinded; and Globalfoundries

6  bypassed it progressive corrective action for "probationary" employees, and terminated

7  Plaintiff without cause or warning. The termination was issued on February 20, 2015, but,

8  on information and belief, was retroactively changed to February 19, 2015, after Plaintiff's

9  requested disability insurance.

10              **Third     Claim: Common Law Fraud and Conspiracy**

11       **Defendant(s): Globalfoundries U.S. Inc.; StanCorp Financial Group, Inc.**

12  **89.**    Plaintiff re-allege and incorporates by reference the receding paragraphs of this

13  Complaint to show Defendants committed common law fraud and conspiracy.

14  **90.**    On information and belief, Globalfoundries and Standard acting in agreement,

15  concert, and conspiracy with each other, jointly and severally, as set forth fully above,

16  made *inter alia* the foregoing misrepresentations intentionally, willfully, maliciously, with

17  knowledge of, or with recklessness as to the materially incomplete, misleading, and

18  fraudulent nature of the misrepresentations.

19  **91.**    As a direct and proximate result of Defendants' pervasive fraud and conspiracy,

20  Plaintiff suffered injury and damages.

21                    **Fourth    Claim: Breach of Contract**

22                    **Defendant(s): Globalfoundries U.S. Inc.**

23  **92.**    Plaintiff re-allege and incorporates by reference the receding paragraphs of this

24  Complaint to show Globalfoundries is liable for common law breach of contract.

25  **93.**    On information and belief, Globalfoundries failed to compensate Plaintiff according

26  to the terms of the Agreement and included.

27  **94.**    Plaintiff and Globalfoundries never mutually agreed to change the start date of

28  January 19, 2015.

1    **95.**    On information and belief, Globalfoundries failed to pay Plaintiff's salary from

2    January 19, 2015, through February 1, 2015.

3    **Fifth        5th Claim for Relief: Intentional Infliction of Emotional Distress**

4    **Defendant(s): Globalfoundries U.S. Inc.**

5    **96.**    Plaintiff re-allege and incorporates by reference the receding paragraphs of this

6    Complaint On information and belief, Globalfoundries acted intentionally and recklessly.

7    Globalfoundries conduct was extreme, outrageous, and dangerous.

8    **97.**    On information and belief, as a direct and proximate result of Globalfoundries'

9    action, Plaintiff suffered severe emotional distress.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint: Jury Demanded
RYAN-DESHAWN WRIGHTMOORE *Vs.* GLOBALFOUNDRIES U.S. INC.; STANCORP FINANCIAL GROUP, INC.

1

<u>PRAYER FOR RELIEF</u>

2

WHEREFORE, Plaintiff prays for the following relief:

3
  1. Judgement in favor of Plaintiff against all Defendants, jointly and severally;

4
  2. Recovery and/or reinstatement of Plaintiff's benefits owed under terms of the

5
  Globalfoundries U.S. Inc. Welfare Benefit Plan;

6
  3. An order rescinding Standard Insurance's final denial on June 29, 2016,

7
  remanding Plaintiff's short-term disability, long-term disability, and New York

8
  state-mandated disability insurance claims to the plan administrator, Standard

9
  Insurance, for proper review;

10
  4. An order severing the terms of relocation agreement relocation agreement (<u>see</u>

11
  Exhibit "**C**," attached hereto) between Defendant Globalfoundries U.S. Inc. and

12
  Plaintiff, due to breach of contract;

13
  5. Pre and post-judgment interest in favor of Plaintiff, according to proof at trial;

14
  6. For Plaintiff's medical cost;

15
  7. For Plaintiff's cost of legal action, costs of court, and attorney fees;

16
  8. For unpaid wages, relocation, and displacement expenses due to Plaintiff;

17
  9. For all other damages permitted by law, according to proof at trial;

18
  10. For Leave to amend this Complaint to add additional charges after exhausting

19
  administrative remedies with the EEOC; and,

20
  11. For all other and further relief that the Court deems just and proper.

21

22
                                        DATED: 8/27/2016

                                        Respectfully submitted,

23

24
  _____

25
                            RYAN-DESHAWN WRIGHTMOORE

                                        5213 E BERRY ST

26
                                  FORT WORTH TX 76119

                   Phone: (682) 559-2896 Email:ritemoebooks@gmail.com

27

28

**DEMAND FOR JURY TRIAL ON NEXT PAGE**

Complaint: Jury Demanded
RYAN-DESHAWN WRIGHTMOORE *Vs.* GLOBALFOUNDRIES U.S. INC.; STANCORP FINANCIAL GROUP, INC.

# DEMAND FOR JURY TRIAL

Plaintiff hereby demand trial by jury.

Dated: August 29, 2016

Respectfully submitted,

Ryan-deshawn Wrightmoore

# EXHIBIT

# "A"

 GLOBALFOUNDRIES

400 Stonebreak Road Extension
Malta, NY 12020 USA
www.globalfoundries.com

December 12, 2014

Ryan Deshawn Wrightmoore

██████████

Fort Worth, Texas 76119

**Personal and Confidential**

Dear Ryan Deshawn:

We are pleased to extend to you this offer of employment to join GLOBALFOUNDRIES U.S. Inc. (GLOBALFOUNDRIES), in the position of Senior Engineer Manufacturing Operations, reporting to Irwan Mohammad. You will be located in Malta, New York.

Joining this new venture represents a unique opportunity to be on the ground floor in building a new global enterprise. GLOBALFOUNDRIES brings together a powerful combination of leading edge technology, operational scale and global talent with the ability to compete as an industry leader from inception.

Your employment will commence January 19, 2015, or at another mutually acceptable date. Your initial salary will be $85,000.00 USD, annualized. We have 26 biweekly pay periods per year. All payments will be subject to appropriate and required deductions. Your base salary will be subject to regular review.

**Initial Review Period:** Pursuant to Human Resource Policy 406, you will be subject to a ninety (90) day initial review period (which may be extended), during which your work performance will be evaluated. If you do not meet expectations, your employment may be terminated.

**Annual Incentive Plan:** You will be eligible to participate in the GLOBALFOUNDRIES Annual Incentive Plan (Annual Plan), in accordance with the terms and conditions of the Annual Plan. You are eligible to participate effective Year 2015 provided you commence work with GLOBALFOUNDRIES no later than October 5, 2015. Your 2015 target bonus opportunity will be 10.0 % of your base salary earned during the performance period. Target bonus opportunities are subject to review and may be adjusted, generally each plan year.

**Benefits:** We offer a comprehensive benefits program including medical, dental, life and disability coverage, and a 401(k) retirement savings plan with matching contributions. These plans, including eligibility terms, will be discussed in your new employee orientation.

_RW_ Initials

 **GLOBALFOUNDRIES**

400 Stonebreak Road Extension
Malta, NY  12020 USA
www.globalfoundries.com

**Vacation:** GLOBALFOUNDRIES provides employees with paid vacation based on length of service. Initially, you will be eligible to accrue 120 hours per year. Vacation accrues daily and must be earned before it is taken.

**Shift Requirements:** You must be able to work a day, night, or compressed workweek shift as outlined in the attached Fab 8 Shift Schedule. The actual shift to which you will be assigned will be determined at a later date by your manager.

**Relocation** To assist with relocation expenses to Malta, New York, you will receive a one-time relocation lump sum allowance of $18,000.00 USD less deductions as required by law. If you leave GLOBALFOUNDRIES within two years of your hire date, you will be required to reimburse to GLOBALFOUNDRIES all or a prorated amount of this allowance according to the terms and conditions of the enclosed GLOBALFOUNDRIES Relocation Guidelines and Expenses Agreement. Please sign, initial, and date the enclosed Relocation Guidelines and Expense Agreement. Return the original document along with the original executed offer letter. This relocation allowance will be paid to you via US payroll once you have started your employment with GLOBALFOUNDRIES.

**Pre-Employment Conditions:** This offer is subject to and conditioned upon your successful completion of the following: (i) a background investigation which, as lawfully permitted, includes an investigation of criminal records, previous employment history and references, and educational background; (ii) a pre-employment drug test; (iii) a pre-employment medical exam (if applicable); and (iv) obtaining an export license for you in accordance with government regulations, as applicable. Please protect your current employment until all of these conditional processes are complete.

**Proof of Employment Eligibility:** In accordance with the requirements of the Immigration Reform and Control Act of 1986, you will be required to provide GLOBALFOUNDRIES with documents to verify your identity and your legal right to work in the United States. You must present this document on your first day of employment.

**Confidentiality Agreement and Acknowledgements:** This offer is contingent upon your signing and returning the GLOBALFOUNDRIES Employee IP Agreement and completing all new employee orientation requirements (including acknowledging the Worldwide Standards of Business Conduct). Your employment with GLOBALFOUNDRIES will be "at-will," which means that you or GLOBALFOUNDRIES may terminate it at any time, with or without cause or notice. By signing below, you acknowledge that the terms in this letter accurately and completely describe your employment agreement with GLOBALFOUNDRIES, and supersede any other oral or written agreements or promises made to you.

 Initials



400 Stonebreak Road Extension
Malta, NY  12020 USA
www.globalfoundries.com

Ryan Deshawn, we look forward to having you as a member of our team and feel our association will be mutually rewarding. If the terms of this offer are satisfactory to you, please initial each page, sign your name below and return the original signed and dated offer letter to Kara Schuff. This offer will remain open until December 18, 2014. If you have any questions, please feel free to contact me.

We look forward to you joining the Team!

Sincerely,

*Lisa Jankowski*

Lisa Jankowski
Manager, Staffing
GLOBALFOUNDRIES

Agreed to and accepted by:

_____          1/19/2015
Signature                                        Start Date

12/18/2014
Date Signed

*RW*  Initials

# EXHIBIT

# "B"

 GLOBALFOUNDRIES'

## BENEFITS AGREEMENT FORM

**Health and Welfare Plans** *(Regular* Employees scheduled to work 30+ hours per week, excluding Co-ops/Interns):*

I understand that it is my responsibility to complete my benefit elections in the ADP Benefits Portal (https://portal.adp.com) within 31 days of my employment date (date of hire counts as day "1") if I want to:

- Select a health plan or waive health coverage
- Enroll my eligible dependent(s) for benefits
- Contribute to a Health Care and/or Dependent Care Spending Account
- Elect supplemental life, dependent life, voluntary AD&D or supplemental Long-term Disability insurance

If I do not make my benefit elections within 31 days of my employment date, I understand I will be enrolled in the following "default" benefits as of my employment date:

- Aetna HealthFund Choice POS II (CDHP), VSP Vision, and Aetna Dental PPO plans (Employee Only coverage)
- Company-paid Short-term Disability, basic Long-term Disability, and basic AD&D insurance
- Company-paid basic Life insurance equal to 2x my base pay

I understand that I am responsible for reviewing the associated plan documents, which are available on the Intranet under MyHR (http://globalconnect.gfoundries.com/sites/MyHR-USA/Pages/Important-Notices-and-Plan-Documents.aspx) and the ADP Benefits Portal. I further understand that after my first 31 calendar days of employment:

- I will not be able to switch to another medical plan until the next annual Open Enrollment period (change will be effective the following January 1st)
- I will not be able waive health coverage, enroll my dependent(s) for health insurance, or enroll in a Health Care and/or Dependent Care Spending Account until the next annual Open Enrollment period (change will be effective the following January 1st) unless I have a "qualified change in family status" as defined by Internal Revenue Service
- If I wish to elect supplemental life, spouse life or supplemental Long-term Disability insurance, evidence of insurability will be required and the insurer can deny the request for coverage
- Retroactive benefit premiums will be withheld (if applicable) through payroll deductions

## GLOBALFOUNDRIES U.S. Inc. 401(k) Plan *(All US Employees)*

I understand that unless I log onto the Fidelity Investments website at www.401k.com or call Fidelity at 800-835-5097 within 45 days of my hire date to decline participation or actively make an election:

- I will be automatically enrolled in the 401(k) Plan with a 6% contribution rate approximately 45 days after my hire date
- My contributions will start on the first available paycheck after my enrollment date
- My contributions and the company's matching contributions will be invested in an age-appropriate Fidelity Freedom Fund

I understand that I may change my contribution rate and investment elections at any time and the changes will be effective as soon as administratively possible. If I contributed to another employer's 401(k) plan in the same calendar year, I am responsible for ensuring that I do not exceed the annual IRS contribution limit.

**I hereby authorize GLOBALFOUNDRIES to deduct the applicable employee contributions from my paychecks for my enrollment in the above benefit plans until and unless I change my enrollment.**

| | |
|---|---|
| _Ryan · Deshawn  Wrightmoore_ | ████ |
| Employee Name (Print) | Employee Badge # or Last 4 Digits Social Security Number |
| _signature_ | 12 / 26 / 2014 |
| Employee Signature | Date |

Please contact AskBenefits@globalfoundries.com if you have questions.

Rev 12-17-14

# EXHIBIT

# "C"

 GLOBALFOUNDRIES

# RELOCATION ALLOWANCE AGREEMENT

This Relocation Allowance Agreement (the "Agreement") is entered into by and between GLOBALFOUNDRIES U.S. Inc. ("GLOBALFOUNDRIES") and <u>Ryan Deshawn Wrightmoore</u> ("Candidate") (collectively, the "Parties").

1.  Relocation Allowance. GLOBALFOUNDRIES agrees to pay Candidate a onetime Relocation Allowance of <u>$18,000.00 USD</u> ("Allowance"), subject to all required taxes and withholdings, to be paid within thirty (30) days of Candidate's first day of work for GLOBALFOUNDRIES ("Hire Date"). The Parties agree that the Allowance is an unvested wage advance upon receipt that Candidate will earn in its entirety by remaining employed by GLOBALFOUNDRIES for 24 months following the Hire Date.

2.  Repayment of Allowance. Candidate agrees to repay to GLOBALFOUNDRIES all or a prorated amount of the Allowance, according to the following terms:

    (a) Repayment Due to Termination of Employment. If Candidate's employment with GLOBALFOUNDRIES terminates less than 13 full months after the Hire Date, Candidate agrees to repay one hundred percent (100%) of the Allowance. If Candidate's employment with GLOBALFOUNDRIES terminates at least 13 full months after the Hire Date, but less than 24 full months after the Hire Date, Candidate agrees to repay the full amount of the Allowance, less eight point thirty-three percent (8.33%) for each full month of employment completed after the twelfth month of employment. Candidate agrees that repayment obligations under this Agreement are not reduced by completion of partial months of employment. Candidate further agrees that Candidate will repay the Allowance by no later than the effective date of the employment termination, and that any outstanding balance on such repayment obligation is delinquent and immediately collectable the day following the effective date of termination.

    (b) Repayment Forgiveness. GLOBALFOUNDRIES agrees to forgive any repayment due GLOBALFOUNDRIES under this Agreement where GLOBALFOUNDRIES terminates Candidate's employment due to a company- or department-wide reduction-in-force. GLOBALFOUNDRIES may also, in its sole discretion, forgive any repayment due GLOBALFOUNDRIES under this Agreement under circumstances of an extraordinary or unavoidable nature. **The Parties agree that Candidate's voluntary termination of his/her employment, or GLOBALFOUNDRIES's termination of Candidate's employment for any reason other than those stated in this section 2(b), are not conditions requiring forgiveness of any repayment due GLOBALFOUNDRIES under this Agreement.**

3.  No Guarantee of Continued Employment. Nothing in this Agreement guarantees employment for any period of time.

4.  Consent to Offset. Candidate agrees that any repayment due GLOBALFOUNDRIES under this Agreement may be deducted to the extent permitted by law from any amounts due Candidate from GLOBALFOUNDRIES at the time of employment termination, including wages, accrued vacation pay, incentive compensation payments, allowances and commissions, and hereby expressly authorizes such deduction(s).

5.  Acknowledgements and Integration. Candidate understands he/she has the right to discuss this Agreement with any individual, and that to the extent desired, he/she has availed himself/herself of this opportunity. Candidate further acknowledges that he/she has carefully read and fully understands the provisions of this Agreement, and that he/she is voluntarily entering into it without any duress or pressure from GLOBALFOUNDRIES. Candidate also understands and acknowledges that this Agreement is the entire agreement between him/her and GLOBALFOUNDRIES with respect to this subject matter, and Candidate acknowledges that GLOBALFOUNDRIES has not made any other statements, promises or commitments of any kind (written or oral) to cause Candidate to agree to the terms of this Agreement.



6.   Severability. The Parties agree that should any provision of this Agreement be declared or determined by any court to be illegal, invalid or unenforceable, the remainder of the Agreement shall nonetheless remain binding and enforceable and the illegal, invalid or unenforceable provision(s) shall be modified only so much as necessary to comply with applicable law.

CANDIDATE                                                    GLOBALFOUNDRIES U.S. Inc.

Signature: _____                 By: _____

Printed Name: Ryan-Deshawn Wrightmore      Title: _____

Date: 12/18/2014 _____                 Date: _____

JS 44-TXND (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**RECEIVED**
AUG 29 2016
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## I. (a) PLAINTIFFS

RYAN-DESHAWN WRIGHTMOORE

**DEFENDANTS**

GLOBALFOUNDRIES U.S. INC.;
STANCORP FINANCIAL GROUP, INC.

**(b)** County of Residence of First Listed Plaintiff   **TARRANT CO., TX**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
5213 E BERRY ST
FORT WORTH TX 76119
(682) 559-2896

Attorneys *(If Known)*

GLOBALFOUNDRIES U.S. INC.
211 E 7TH ST STE 620
AUSTIN TX 78701-3218

STANCORP FINANCIAL GROUP, INC.
1100 6TH AVE STE P12B
PORTLAND OR 97204-1015

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ■ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ■ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ■ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   Pharmaceutical | | ☐ 820 Copyrights | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander   Personal Injury | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability   ☐ 368 Asbestos Personal | | | Corrupt Organizations |
| Student Loans | ☐ 340 Marine   Injury Product | | **LABOR** | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product   Liability | | ☐ 710 Fair Labor Standards | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability   **PERSONAL PROPERTY** | | Act | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | | ☐ 720 Labor/Management | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | | Relations | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability   ☐ 380 Other Personal | | ☐ 740 Railway Labor Act | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   Property Damage | | ☐ 751 Family and Medical | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury   ☐ 385 Property Damage | | Leave Act | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury -   Product Liability | | ☐ 790 Other Labor Litigation | Act |
| | Medical Malpractice | | ■ 791 Employee Retirement | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | | Income Security Act | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | | | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment   ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/   Sentence | | or Defendant) | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations   ☐ 530 General | | ☐ 871 IRS—Third Party | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 535 Death Penalty | | 26 USC 7609 | |
| | Employment   **Other:** | **IMMIGRATION** | | |
| | ☐ 446 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Other   ☐ 550 Civil Rights | ☐ 465 Other Immigration | | |
| | ☐ 448 Education   ☐ 555 Prison Condition | Actions | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ■ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. SECTION 1001 et seq. ("ERISA") 28 U.S.C. SECTION 1332
Brief description of cause:
ERISA INTERFERENCE, CLAIM DENIAL, FRAUD, AND CONTRACT BREACH

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ **$197,500.00**
CHECK YES only if demanded in complaint:
JURY DEMAND:   ■ Yes   ☐ No

## VIII. RELATED PENDING OR CLOSED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____